Our second case is 24-1229, J.W. Aluminum Company v. ACE American Insurance Company. Mr. Bono? Good morning. May it please the Court. My name is Craig Bono, and I represent the appellants. I want to start with the questions that the Court sent to us earlier in the week, because obviously that was top of the Court's mind. So I think the answer to the first question on whether the endorsement effectively sort of carves out the relevance of Condition M in the policy, I think the answer is yes. When there's an endorsement that is more narrow than the general policy itself or a clause within, then that endorsement supersedes the general statement in the policy, whatever that statement may be. Here, the endorsement is about sublimates. The relevant piece of the policy is also about sublimates. But if you look at the language of the two, the general statement in Condition M talks about that sublimates shall apply to all losses arising out of any one occurrence. That's the language. And that is what applies, generally speaking, unless an endorsement does something that would carve that down or narrow it in some way. The molten metal endorsement, which is the relevant one for purposes of this conversation, says that the sublimate in that endorsement applies to direct physical loss or damage caused by heat from molten metal. So we have a couple of things that are different. One, we don't have the term all losses. We have direct physical loss. And those are clearly different. All losses must mean something greater than direct physical loss. Otherwise, there is no reason to use the two different phrases. The second thing is we're not talking about all losses that arise out of any one occurrence. We're talking about all losses that are caused by something very specific, heat from molten material. As a result, the molten metal endorsement is really what we should be looking at when we're going to determine the question that's really at issue here, which is, what is the – is there a reasonable interpretation of this policy and this endorsement that allows JW Aluminum, the plaintiffs below, to recover something greater than the sublimate that is included in that molten metal endorsement? And that's the question that was discussed at the district court. That's the question at issue here. Is there a construction of the policy that raises a reasonable inference or a reasonable interpretation that would allow for recovery? So the second part of what we asked in the supplemental order was whether or not this issue that you're now talking about was forfeited because it wasn't the focus of the analysis below. So what's your position on that? So – which is sort of where I was headed, which is, the question below and the question here is, what is the proper construction of this – of the molten metal endorsement in light of the rest of the policy as a policy must be interpreted together? So what is the proper construction of this policy as regards to the sublimate applied? That is the question that this – whether the endorsement supersedes is seeking to answer. That is the question that all the ambiguity arguments that we will get to later is seeking to answer. So no, it hasn't been forfeited because this court will allow variations on arguments as long as the fundamental question was presented below. So where would you say, if I'm looking at the record, where would you say is the closest place in the district court this issue came to coming up? So I guess it depends on what you mean by this issue. If you're talking about this  No, the question about how these two clauses relate to each other and whether one supersedes the other. So the supersede question, the specific issue of superseding, that specific issue, the doctrine of endorsement superseding the policy itself, I don't believe it did come up. That seems like a pretty distinct argument. Because at a high level of generality, that argument is the relevant clause here is not X, it's Y. We're all looking at the wrong clause. That's a pretty discreet argument. Well, so I wouldn't say that it didn't come up, though. And I think in our reply brief at note seven, there's a long list of various points within the record that all of the arguments were referenced. And so I think I don't have a recollection exactly in the record, but note seven is where I would look to get the answer. Can I just say a few things about the thing that is constantly making my head hurt about this case? And that is like what the sublimate actually does. It's a great question. Well, no. Before we get to what the sublimate means, I'm trying to figure out what the sublimate does. And that's, here's the question. So imagine this exact same policy. Every single thing about this policy is precisely the same, except the molten metal endorsement is out. The contract is in all other respects identical. Assume the same facts here, the same thing happened, and assume that we have stipulated that $35 million of bad stuff happened. Okay. Okay. In that scenario, does your client get nothing, or did they get $35 million? So they get $35 million in that scenario. Because what this endorsement does is, so I guess it kind of depends. So in the $35 million that you just described, it would depend how that $35 million, what caused that $35 million. Sorry, that $35 million of stuff was at least an approximate, both in a but-for causation and approximate cause, all $35 million is as a matter of approximate cause under tort law caused by the bad thing that happened here. Right. So as you probably would guess, approximate cause under tort law, we are positioned to  No, I understand that. Let me rephrase. Any conceivable causation standard you want. Okay. All right. So let me just break down why this is important and to answer your question, I think. So the way that the buckets of damages in this scenario are separated matters to what would happen if the molten metal endorsement didn't exist. Was gone. Okay. Right. So if the molten metal endorsement, or if there was, let's say that molten metal hit a bank of computers that were worth $10 million and melted those computers. Now, as the endorsement sits, that $10 million falls within the molten metal sublimate, right? If then a fire occurs and all the other things that happen in this, you have $25 million that would, in our view of the world, would fall outside of this sublimate. And so you would have, you'd be able to recover all $35 million in that. If that computer was worth $25 million, you only get $10 million of that. And then you get the additional $10 million that happened because of the fire and the water stoppage and whatever. If you took out the molten metal endorsement, then you just get all $35 million. You don't even have to do the analysis to what was, what damage occurred as a result of the heat from the molten metal hitting this computer bank in this example. In our example, it's a de minimis amount of damage that was caused by the heat because what it landed on was a piece of metal. So now, okay, now I want to put the endorsement in. The molten metal endorsement's in, but now I'm going to make one other change. I'm going to delete the words by heat. The molten metal endorsement is verbatim the same. It just doesn't include the words by heat. What happens then? So under the, it's a really- So now it just says caused by molten, it just says caused by molten metal. So now it's broader. Theoretically, right? Because heat is out. But the way that the insurers want to read it and the way that the district court read it, I think that example gives you the same result. Because by heat was not, did not happen. Sorry. You think the, you think that the proper construction would be the same there or you think that they think- So I think at the district court level, effectively what the court did and what the insurers- Is read out the words by heat. Is they read out the words by heat. And so they made them equivalent to each other. I don't think there is a difference under that reasoning. Under our reasoning, the difference is by heat means the damage caused by the heat. So it's limited to the damage caused by the heat. It isn't damage caused by that molten metal. Now, what other damage could molten metal cause? I don't know. I don't know what all the hypotheticals of roads you could go down that would make it different, but it would certainly make it broader if you took heat out. The fact that heat is in has to narrow because molten already contemplates heat, right? Molten material is hot. That is what the word molten means to me. Something metal. There's no such thing as not hot and molten metal. That's right. You have to melt something in order to make it liquid, and that is hot. So that's already there. The fact that molten material- So if it was heat, damage caused by molten material would have included heat without putting the word heat. So that they included the word heat means that you're cabining it now to specifically damage caused by heat, and that isn't what we have here. So on that front, what is your best authority for the- So you say fire is not caused by heat. What is your best authority for that proposition? It strikes me that one of the very obvious consequences of really high heat is fire. Well, so fire is- can be caused by heat. Well, not in and of itself, right? Fire needs more than heat, right? It needs something- Oxygen, material, yes. Oxygen, right? It's not just heat. Heat doesn't necessitate fire, but certainly you need it in order to have a fire. That is true, but I don't know that that matters because the fact that one thing caused another thing that then caused a fire department to come and spray water that then caused- Oh, no. The water becomes different, but I'm focusing on the heat caused the fire, and the fire itself caused some damage independent of the damage caused by the effort to put out the fire. Right. So now I'm talking about damage caused by the fire. Okay, damage caused by the fire. That's the roof. So we're- so this comes back, and this case is really- it's a choose-your-own-adventure, really, situation, but this really comes back to is this an insuring clause or is it not an insuring clause? And that's important because that tells you how you're going to- this cause question that you keep asking, right? Like what does cause mean matters. So if it's a tort, cause means something different than if it's an insuring clause, where Leslie would suggest or states that there's two things- two things you look to to determine what caused a damage. The first is the nearest efficient cause. If the nearest efficient cause, so the thing that happened nearest to the damage, if that thing is an insured peril, end of discussion, insurance exists. That's what we have here in your example. Fire cause is the nearest cause to the damage to the roof. That means that's the- that is a peril that is insured. That is a peril that is not part of that sublimit because it doesn't say heat and fire. It says heat, which is different. As a result, that's it. End of discussion. The fire and damages subsequent to the fire or related to the fire, caused by the fire. How are you- how do you- I'm curious to see how you handle the issue of your expert saying that this was all caused by- the fire was caused by the molten material explosion. So it- it is true, and we don't dispute that. That's just what happened. The molten material was really hot, like 1,800 degrees or some absurd number. It's very hot. And when that hot thing hit what was aluminum dust fuel, basically sitting on top of an I-beam, in the presence of oxygen, that ignited. But that is a separate- that's a separate quote of it, which is, again, is not a defined term in this policy. So we looked just what the dictionary says for event. And while one definition is occurrence, which is circular because that means an occurrence equals an occurrence, the other definition is something that happens in one point in spacetime. So the first event is when that- when the pop happened in the tub, right? That- that is ejected this piece of aluminum. That's the event that led to the heat damage on the roof. And then, while it didn't take a long time for the fire to occur, some period of time elapsed. Then a fire started. That fire is what caused damage to the roof. It wasn't the heat from the aluminum that caused damage to the roof. It was the fire that happened later that caused damage to the roof. And then the fire department came, and then they put water on the fire, which caused an additional set of damages, which has happened- happened later. Obviously, the fire department came later. One other question about that. So when we look at the endorsements regarding the terrorism and I think they say movement of the earth, which I guess is earthquake and flooding, there is- there is- it explicitly says this clause about fire and water and- but it doesn't say it here. Right. So in the definition of- so again, I'm going to get the choose your own adventure issue. But in the definition of occurrence, there are two definitions. So to the extent that the condition in matters. Condition in matters because it has the term occurrence in it. And occurrence has been defined by the policies. But there are two definitions of- of occurrence. One that is general that says losses that arise from one event, which is the one we've been talking about and the one that's relevant for our purposes for the medal endorsement. And then there's a separate- separate definition for earth movement and flood, which I guess is- I also guess is earthquakes. But that definition says occurrence is the sum of all losses that arise from damage caused by earth movement and flood. Right. So that is a different thing. But there's two definitions. It must be different. So series of losses out of one event is the relevant for our purposes. Sum of all losses is relevant for earth movement movement. So as a result of sum of all losses that arise out of damages within the 72 hour period, which is what that definition says, that means it's broader and encompasses things like subsequent fires. So whenever they got to the endorsement for the- for flood and earth movement, they had to carve out fires because their definition of occurrence contemplated it. They didn't need to do that for molten metal because their occurrence definition didn't contemplate anything other than the one event, which is the heat from molten metal escape. The district court in this case seemed to have melded the two sort of standards for liability with respect to causation applied by and caused by. Is there a difference in your mind? And if so, should they- should they be analyzed separately? So applied by? Yeah. Shall apply to all losses. Let me- let me quote her. Consequently, the court finds that the $10 million sublimit applies because the loss and series of losses sustained by JWA, sorry, arose out of and were caused. So are those two different causation standards? Right. So they are, and they're two different words, they mean two different things. And notably, the molten metal endorsement does not use the word arose out of. It solely says caused. Whereas condition M says arising out of, which is brought back to my original point and why the more narrow language in the molten metal endorsement should govern and cause implies something more direct, particularly in the molten metal endorsement, where it literally says directly, direct physical harm caused by heat. So applying those two standards in the way that you think they should be applied, what would be the result with respect to each of the things that happened in this case? So the dam- whatever damage is caused to the I-beam by the molten material hitting it would be limited to $10 million. All subsequent damage that occurred as a result of fire, and then later as a result of water damage from the fire department. And then finally, as a result of JWA deciding that they needed to shut off their utilities because there was natural gas pipelines in the wall by the fires and they didn't want the building to explode and kill all the emergency workers and the employees. So they shut those down, which meant the furnace is turned off. And so all of that molten metal cooled and then solidified in all of the machines, which meant that the machines were basically useless now because that can't happen. You can't make this stuff happen. I know. So all of those damages, which had separate events, those damages would not be subject to the limit, to the subliminal molten material endorsement. All right. Thank you.  Mr. Duffy. Good morning, Chief Judge Diaz, Judge Heitens, Judge Benjamin. May it please the court. Just as in the case BLG Enterprises versus First Financial Insurance Company, the interpretation rule that the endorsement controls has no application here. Just as in that case there was no conflict with the endorsement, it did not provide a new grant of coverage that displaced an earlier exclusion. And that's the same thing here, Your Honor. But to the second point of what Your Honor's asked earlier, there's no question that any argument to the contrary has been waived. There's been no mention of any superseding. There's no argument that the damages are limited in some way other than this fabricated effort to try to sever the application of the molten material endorsement at the I.B., which doesn't make any, it's not a reasonable interpretation. It would read out of the policy the molten material endorsement, the condition M, the occurrence language, because the molten material endorsement applies to an occurrence, which is a series, a loss in series of losses. Your Honor asked earlier, Judge Hytens, what happens if the molten material endorsement weren't present at all? It's just gone. The same thing happens because the sublimit is already there in the policy. The sublimit is listed among the sublimits in the declarations at J.A. 263. This is the part where it just says, like, molten metals, $10 million? Right. But that's all, so literally, I don't want to spend too much time on that hypothetical contract because that's obviously not the contract we have, but if a contract literally was the same and it just said, molten metal, $10 million, with no explanation, you think that would be the same results here? It would. But the language of this clause is literally irrelevant then? It's not irrelevant because it shows exactly that it applies here. This is talking about a molten material event that happened. This is what happened. It was the accidental discharge from equipment. Can I ask you about this, I don't know how much it matters, but this exclusionary versus inclusionary clause, I'm reminded where the Supreme Court once said, in the world of silk purses and sows, the Anti-Terrorism and Effective Death Penalty Act is not a silk purse of statutory drafting. That is how I would describe this insurance contract. Because it's a little bit weird to call it an exclusionary clause given that the very first words of the clause are, this policy does insure against, blah, blah, blah. That sounds like granting coverage, not clawing back coverage. Yeah, and thank you, Judge Hines. I think that goes to my earlier point that it is affirming, it is essentially summarizing the coverage that exists. I mean, that's one way to interpret it. The other way to interpret it is, but for this clause it would not cover the thing I'm about to say. That's how I would normally write the words, this clause does insure. It's to extend coverage, not to contract coverage. Well, the point about the, it's an all-risk policy, so there's no question that this risk is covered. In fact, it's saying, it's understood and agreed that the risk... Why do you need to say things that are obvious? Because what it's doing, Your Honor, is it's setting up the actual exclusion that comes later. So the first sentence is defining, this is the coverage you have, it applies to the property damage in this case, in these instances, but it doesn't apply to these two specific things that follow that. That's where there's a conflict and a change, but it has nothing to do with what happened here. It's talking about damage to the actual material. Can we go to the language of the actual clause? Because here's my concern. How does your argument and the district court's holding not delete the words direct and by heat from this provision? Well direct... Let me rephrase. In your view and in the district court's view, how would this mean anything differently whatsoever if we deleted the words direct and by heat? I don't think it matters because... So those three words are all superfluous in your view? They're not superfluous at all. It's explaining, Your Honor. It's a direct physical loss and damage. It's an insurance term of art. It is... And Ms. Grimes, a broker, admitted that. It's in the JA at 425. And what happened is the... Everyone agrees that direct means proximate, not remote. Both parties have agreed to that. Both parties cite the couch on insurance provision, which is 160... But you think it would mean exactly the same thing if we deleted the word direct? Because what it says, Your Honor, is direct includes a series of things that directly result. And so you're not splitting things at an I-beam. The direct includes that. It just doesn't include an intervening cause. That's what separates something from direct. And that's what couch, the very provision they cite and rely on, says later in that paragraph about this specific language. If it's literally direct only, direct and only caused by heat, then I wonder what this clause does. Because admittedly, I'm not an expert in this industry or whatever, but what is the world in which heat and only heat, not fires caused by heat, not building collapse caused by... What is the world in which heat alone is going to plausibly cause more than $10 million in damages? Right. Heat is... There are many consequences of heat, one of which is fire, the biggest one anyone would be worried about. But there are others. For example, it could have popped out and landed on the ground and melted the beam and the roof fell down. There was no fire, but it's still covered because it's a result of heat. Fire is an obvious concern that the underwriters and carriers wanted to avoid the risk of or limit the risk of with this provision. And that relates, Your Honor, to the causation question that you all were asking earlier, is that this court in Valentine answered what happens in this situation, whether you're in Distinguished Leslie, which is looking at an insuring clause to say, is this specific peril something that fits within a specific peril clause? We're not there here. This is all risks. It fits. It is within the ambit of the insurance policy. And then the question is, what are the limitations? And so the limitations... I've heard your answer on the words direct, but why heat? Why, in your view, does this clause contain the words by heat? Because it seems like what you're really arguing it means is this sublimate applies to any damage that is caused by molten metal. It is. And the... Well, no, no. So you're telling me we also should ignore those? In your view, what meaning do the words by heat add? And why, if they don't add any meaning, why doesn't this clause just say by molten metal? That sentence is setting up the exclusion that follows that relates directly to that instance. So by heat is indicating that if something happened, we're not... This what escapes isn't covered. And the machinery, whatever malfunction machinery that might have caused it, isn't covered. That's taken out of even the sublimate. That's excluded entirely. That's what the molten material endorsement is doing. But the benefit of it here... What do you mean taken... Wait. If it's taken out of the sublimate, does that mean it goes back to... The first question I asked your friend on the other side, does that mean we go back to the top limit? Or does it mean it's not covered at all? No, no. Those two things, Your Honor, are directly excluded in that language. It does not cover. It says this policy does not cover. So those things aren't covered. Everything else is subjected to the sublimate. And in fact, the very thing that it's talking about is what happened here. And so there's no question that the sublimate applies. And then it applies and you ask what does it apply to? It applies to occurrences, which is a loss or series of losses from the direct physical loss and damage that we've talked about. And direct again means through, you know, the direct means no intervening cause. And then when we're looking at the Valentine case again that addresses this insuring clause and distinguishes Leslie actually reversed the Honorable District Court below saying you're relying on Leslie and that's not an issue here. Because in fact, the language Valentine, this court used was when you're limiting, didn't even have to, didn't just say exclusion, but if you're limiting the policy, what you're looking at is is there any causal connection? And this court had certified a case to the South Carolina Supreme Court in Broach in the 80s that said does there have to be any connection between an exclusion, facts that present an exclusion, and a loss? And the answer was, well, yeah, there's got to be something. You've got to tie it to what was the reasonable efforts that the carriers were trying to limit the exposure to. So you've just teed up. So this is literally like a torts exam. I mean, I know this is an insurance case, but this feels like a torts exam. So I have a couple of hypos I want to ask you. Say someone is driving by during the accident and they see the fire at the plant and that causes them to crash their car into a pole. The pole falls over and causes damage to the plant. Do you think that the molten metal exclusion applies to the damage caused by the pole? Does a molten metal, no, it does not. That's a no. It was clearly in a butterfly effect, but for causation, it was clearly caused by the fire, by the discharge of molten metal. Because the molten metal caused the fire. The fire caused the person to see the fire. Seeing the fire caused the person to crash, which caused the pole to jump in. I mean, like in a but for causation, it's definitely but for cause. Well, Your Honor, the molten material endorsement wouldn't cover that because it's directly discussing the direct physical loss and damage, which would mean no intervening factor. I'm not saying that's a negligent operation of the vehicle. They're doing something wrong. All right, great. Let's do a hypo where no one is being negligent at all. Say three months later we find out that the water that was used to put out this fire, and you think the damage caused by that water directly, you think is covered, right? Yes, sir. Okay. So now three months later we discover that water caused mold to spread all throughout the building. That mold causes all kinds of damage. Do you think that's included? Yes, sir, it is. Okay. Last question. Say when they go to sell this property like 20 years from now, it turns out that that mold has massively damaged the resale value of the building. Is that covered? Is that covered by the sublimit? Yeah, it turns out my building is worth a lot less money because it's got a real mold problem now. It is covered. And a case that applies a sublimit in that way is the Southern District of New York case, this National Railroad Passengers case, and it's about what the damage to the tunnels. So it was a flood sublimit, and it came in and said, okay, well, there were all these things that happened when the water was there, but when the water left, it left this chloride that caused other damages later. And the conclusion was the sublimit still applies because this is all the natural result of the flood coming in. Okay. So if we intend this sublimit to cover stuff like that, I really don't understand why we have the words direct and by heat, because that, it really feels like what we're really interpreting to say is anything caused in a but-for sense, absent intervening and superseding negligence, is covered, which is, this is a weird way, if that's the rule one wants to adopt, this is a weird way to write that rule. Your Honor, I understand that point, and there are a lot of hypotheticals that we could entertain to test it, but the benefit here is the sublimit describes exactly what happened in this instance, and so there's no question that it applies here. Well, the question, and the reason you say no question is, it isn't even whether I'm, whether you're right or my hypotheticals are right about what this would mean, it's whether this is ambiguous, right? It's not even about what the correct meaning of this clause is, like what we would say sitting here we think is probably the right meaning. It's whether it's unambiguously the right meaning, right? Well, I think it's when you look at the entire policy as a whole, as the district court did, and with, as Judge Benjamin pointed out, the undisputed facts that the molten material caused all of these losses. The plaintiff's experts say it. All you do is look at the policy, and when you look at the molten material endorsement, you look at the occurrence definition, and you look at Condition M as a policy directs you to, it's applied the same way the district court did. And one of the other points, Your Honor, is that the things that you're raising in relating to the waiver argument, the waiver argument isn't just important because it procedurally bars the plaintiff from pressing it here, but at bottom, this court's exercise is trying to determine what the intent of the parties is. And if after years of litigation, depositions, rounds of briefing below and here, they haven't articulated that yet, clearly it wasn't the understanding of their client. Wait, wait. It can't be articulating an interpretation of the contract that they'd never, now, that they'd never advanced before. That clearly couldn't be what they had in mind. That wasn't their intent in coming into this contract. So I take your point about the pre-argument letter we got, but I want to take the issue about the direct versus indirect. You don't contest they preserve the direct versus indirect argument, right? They do preserve that, the language of the, of something being indirect, which is language of an exclusionary clause, which wouldn't make sense to add in this mortal material endorsement because you're restating what the coverage is. If you added that there, you'd have ambiguity then about anything that's covered in that. I just mean to the extent their argument is something that introduces ambiguity, the argument would be, I'm not saying you accept this argument, but the argument is the thing that potentially introduces ambiguity is the fact that the molten metal exclusion contains the word direct. They preserve that argument, right? They are, yes, they preserve that argument. What about, what about the argument, this heat versus fire? I mean, they do make that argument below. Right, and your honor, I think that as the discussion with my colleague on the other side earlier demonstrated, I mean, heat is, it results in fire. And there's, the point is, it is a direct result here that the heat from the molten material caused the fire. And that's, it would be unnatural, you'd be reading several provisions out of the policy if you suggested that the only damage that gets covered by that is what happened on the beat. Because it's a, Then why does this contract say the words by heat? Why doesn't it just say damage, direct damage caused by molten metal? Why in the world are the words by heat? On your view, why in the world does this contract contain the words by heat? Your honor, there are other ways you could look at it. If, let's say, an employee were anxious and started to run and slipped and fell on it, it wouldn't necessarily be covered because of a slip and fall. Or if it cooled and hardened. It's not heat at all and someone tripped over it and got hurt. It's not covered by the heat portion of it. But what heat does do is it's broader than fire. As I mentioned earlier, if it pops out and melts a beam and the roof falls, it's covered. And even if, and then if it pops out and catches something on fire, it's covered. It's a broader expression. Wait, hold on. The trip and fall example doesn't work for you because this contract excludes personal injury, doesn't it? I haven't looked at that, to be honest, your honor. Bodily injury is covered, but, you know. So that's taking, that person's not, this doesn't exclude that because that's already excluded by a specific clause that says there's no coverage for bodily injury. Okay. Well, the idea is there are other, there are other ways that molten material, you know, could cause damage. Your honor, as I go back, uh, touch briefly again on the, uh, on the BLG case, um, that your honors raised earlier and, and hit on the point that the, the, that case involved a new definition, an endorsement that was later. And similar to this one, the, the plaintiffs there argued that is a new grant of coverage that then displaces the exclusionary clause. And the court said, no, you need to read them all together. And when you read the provisions together, there's no necessary conflict. And in fact, that's not a new grant of coverage. It's just applying a new definition. So the specific exclusion doesn't apply there. The court here below had a molten material endorsement that was not a new grant of coverage. And that's, uh, the, the point is the sublim, the, the all risk policy already provides the coverage. There's not a question of an insuring clause here. You have the coverage. And then the question is, um, how does the molten material endorsement affect that coverage? And what it does is it restates it. It says it's understood and agreed that this is what's here. And it introduces two exclusions that don't apply here. So there's no conflict with condition M. There's no conflict with the definition of occurs. And so just as in that case, the district court here applied, uh, interpreted the provisions together, which led to this result. Any other questions for the panel? I'd be happy to entertain. Thank you very much. Thank you. Thank you. So just very quickly, I just have a couple of points. Um, my colleague just said that fire was the biggest risk anyone would be worried about in regards to the molten metal endorsement and that the insurers wanted to limit the risk of fire by that endorsement. That's what he said. But they use the word heat. The word fire was available. If that is the biggest risk that they are worried about, that word is available. Leaving off the word heat is also available. Fire is a peril listed in this policy. They knew that fire was a thing that could exist in this policy. It's listed in the policy as one of the potential perils. They didn't use the word peril in the molten metal endorsement, or sorry, fire in the molten metal endorsement. And as a result, and they chose the word heat, and that choice has consequences, whether they apparently run away from any consequence of the word heat, it has, the choice of that word matters. And it has to, and that's how contract construction works. So it's got to mean something. And it can't just mean fire, because fire means fire. And they didn't use fire. Well, then can I ask you the same question I asked your friend on the other side, which is like, okay, but if it literally only means heat and that heat doesn't even include fire, what is the plausible world in which heat, qua heat, and only heat is likely to cause more than $10 million in damages? So I don't know the answer, to be honest with you. It would depend. I suppose the question contemplates that the molten metal lands on something that is. And that's simply by virtue of the heat. It's going to cause more than 10. Because after all, the only reason you'd cap liability at $10 million is that you think that that cap, it might be more than $10 million, which means clearly whoever this hypothetical drafter of this contract was trying to do is to say, let's make sure that it doesn't go, that they don't have to pay more than 10, which has to mean that they're contemplating a scenario in which it might be more than 10. And I, again, I don't know a lot about this underlying stuff, but it just strikes me that it seems fairly obvious that what happened here is like heat causes fire, fire causes collapse, collapse causes, this all seems like well within the heartland of what could plausibly happen ex-ante. And you could see why you'd want to limit the damages of that happening. I guess I've had a very hard time even hypothetically thinking of an example where just the heat would cause more than $10 million such that you need to cap liability for just the heat at 10. So I use an example earlier of a very expensive bank of computers that got melted, maybe that, but I will say this, that whenever you're, and I didn't really appreciate the size of the enterprise at JW Aluminum until we went there as part of this process and I got to see these buildings and these machines, and they're enormous, like machines that are, like takes up large parts of this room. And the amount of molten material that, while in this instance we're talking about a tiny droplet that popped out of a bin, right, the amount of molten material that they're dealing with is massive. Like you're, if all of it got out, whatever, let's say that there was a hole or whatever happens, right, and it just spills out throughout the entire facility, that conceivably could cause hundreds of millions, maybe. It's a lot of aluminum that you have the potential to escape here. That's just not what in this particular instance. I want to go back to your questions related to whether, effectively, whether this is an insuring clause or an exclusion clause, and why would you put this does insure to start a clause that then you ultimately exclude things with, if that is the insurance company's now view of this clause. It's a confusing clause, unquestionably, which really comes down to the fact that really no one is very clear about what this clause is doing, whether it's insuring and providing insurance, or whether it's limiting insurance, or whether it's excluding insurance, or if it's doing some combination of those things, comes down to the point on ambiguity, which is all that needs to exist here. If there's ambiguity in this clause, in the definition of occurrence, in condition M, in perils insured and how that relates to the molten metal endorsement, which we didn't really even talk about, where perils insured lists sequence of events and damages that ultimately occur later down a sequence of events, that is insured by this policy, and then the molten metal endorsement talks about one of those sequence of events, but doesn't have the anti-concurrent causation cause clause that you see elsewhere, like the biological exclusion that does use an all together, and sum total, if there's ambiguity in any of this, Frankenstein's monster of an insurance policy, then we win. That is how it works when you're talking about applying insurance and seeking to limit the coverage of an insurance policy. If there's an ambiguity, the ambiguity goes in favor of the insurance and in favor of coverage, and we certainly have that at one of the 17 different levels that we talked about here today. On the last point on the supersedes and whether it was discussed below, I think that it's true that the word supersede or superseding was never stated and was probably not written. I think that's probably true. I didn't search for it specifically in the complete record, but I believe that to be true. But the concept that the molten metal endorsement is what we should be looking at and Condition M is not what we should be looking at, that concept was absolutely discussed. There's tons of briefing that's focused solely and entirely on molten metal endorsement and not on Condition M. Certainly their argument has always been that Condition M is important, but our argument certainly is partially great. If you look at Condition M, ambiguity, we still win. But if you don't, if you just look at the endorsement that is actually the relevant one here, we win that too. And that effectively incorporates that concept. All right. Thank you very much. Thank you. Appreciate the arguments of both
judges: Albert Diaz, Toby J. Heytens, DeAndrea Gist Benjamin